You're on to the third case on the docket. This one is 2-0-0-0-0. City of Wheaton v. Ford. The front desk are four defendants and a defendant. Alright, the woman on behalf of these defendants and defendants is Jessica W. Riso. Alright, the woman on behalf of the defendants is Judy M. G. Warren. Mr. Riso? You may proceed. May it please the Court. Jessica Riso, Office of the State Appellate Defender, on behalf of Appellant Brent S. Ford. I've raised two issues in the briefs in this case, but today I'd like to focus my argument on Issue 1, the improper denial of the motion to quash arrests and suppress evidence. But I'd be happy to answer any questions that your Honors have on the second issue as well. In order to effectuate a traffic stop on a vehicle, a police officer needs reasonable suspicion that the driver has committed a crime. In this case, the alleged offense was improper lane usage, which provides that a vehicle shall be driven as nearly as practicable entirely in a single lane. However, here the video evidence presented to the Court shows that the police officer did not have reasonable suspicion to stop Mr. Ford where the car did not cross over the lane line and into the other lane. When, having looked at the video, and I'm sure you did too, when did this allegedly occur? My best guess is that the testimony didn't give a time in the video. It didn't say, I see it at such and such seconds. But I know that the only place, you know, it was a very short amount of time before he was pulled over. So sometime within that, I don't know, less than a minute, the officer claims to have seen two movements. Well, we're pretty clear it didn't happen. At least, are we pretty clear that it didn't happen as he passed by and the officer made the turn behind him? No, no. It happened when he was following. The testimony was that it was when he was, well, when the other officer was driving, was following, yes. And as this Court has stated in People v. Mueller, again, merely touching the line is not enough. The car needs to cross over into the other lane. And here the judge, in his alternate finding at the motion to reconsider, found that the car wheels were on top of the line. He couldn't say that it went over the line, merely that it was on top of the line. And also, so in addition to the video, which your honors are able to view as well and, you know, draw your own conclusions from the video, as the Supreme Court has said, you're not, you know, the lower court's not in any better position to view the video than you are. So you can judge that for yourself as well. And then secondly, there was the testimony of the officer, Officer Saltzman, who had testimony that was just not very credible at all. He testified, initially he said he was, they were 50 feet behind the car, but he didn't remember. And then it was six car lengths. But by the time he got to trial, he admitted there were 100 yards behind the car when there was this alleged threatening fraction. 100 yards behind the car, it's dark, there's no street lights. And he, that he testified that he could clearly see the tires cross slightly over the line. At that distance, in complete darkness, it's very unlikely that he could be so positive that he clearly saw everything. And again... Well, when you say complete darkness, you mean it was dark out. I mean it was nighttime. Because we saw the headlights of the squad car. Right. And you could see the reflection of the... So it's not like looking for a Black Panther in a closet. Of course, right. But in terms of the illumination of the actual tires, you know, there's no light. The roads wasn't illuminated except for the dashed line in the center. Does Mueller have any effect on this case? I'm sorry, I'm not sure if that's your question. Mueller is the case that says... No, I know, I know. What do you mean does it have any effect? Does it control here? Is it persuasive here? Yes. Is it precedential? Yes. Is it metaphysically connected in some way, galactically or otherwise? Galactically connected to this case because the case clearly states going on the line is not enough. You have to cross over the line. And although we did have this testimony from Salton that it went over a little, the video does not corroborate that. And the judge's ultimate finding was that the car tires were on top of the line. And under Mueller, that means there was not reasonable suspicion to pull the car over. The one other thing I'd like to point out is initially at the motion hearing when the judge said that the video did corroborate the officer, the judge was basing that on his viewing of the taillights of the car rather than... He said he couldn't see the tires in the video. He was basing it on the taillights, and maybe because of the taillights, it looked as like maybe it did corroborate that it went slightly over. But again, as I argued in my brief, with the light illuminating from the taillight, it's going to go farther than the actual car. So you can't base it just on the light coming out of the taillight. He couldn't see the tires. So there was no corroboration for the officer's testimony that it did cross over the line. Are there any other questions? Well, if the trial court finds the police officer credible, quite frankly, that videotape doesn't corroborate anything. I mean, it's fuzzy, it's dark, it's very difficult to see anything in it. If the court finds the officer credible, is that enough? It's not in this case because the finding is against the manifest weight of the evidence, given what I've discussed about his testimony. It's, you know, the distance at which he claims to have clearly seen the tire, the darkness. As you said, the video doesn't corroborate it at all. So it's not enough that the judge found initially that it did corroborate the officer. If there are no other questions, I would just ask. Well, there is one question. The statute talks about the vehicle. The taillights are part of the vehicle? Yes. But what does Mueller say about what part goes over the line? I believe Mueller references the tire. And I know that the state did make an argument in their brief regarding whether or not a part of the car is wider than the tire and whether that would make a difference. But in this case, the evidence shows it. You look at the video when the car is stopped for the traffic stop. In this case, the taillights are parallel to the tire. There's nothing over. So what, you know, the real part of the car. Wait a second. Was there testimony that the tires and the edge of the car were in the same plane, so to speak? I don't believe there were, but in the video evidence. And wouldn't that have been the video that you can't see Diddley in? So it's much clearer at the stop. I'm talking about at the stop when they're doing the field sobriety test. You see the car stopped at that point. You can see it's not one of these older cars that has the body of the car outside the tire. It's not that kind of a car. It's straight up and down, if you take a look. I believe I cited in my reply brief a point in the video that you can actually see very clearly the dimensions of the vehicle. When is an improper lane use violation complete? Where is the tire? Over the line. Both sides of the tire? On the other side of either the dash line or the fog line? Or yellow line, whatever. Yes, I don't think that that's clear under Mueller. It just said cross into the other lane. I don't think the entire tire would need to cross over, or a portion of the tire. But once the tire crossed over the line, rather than just on it. I know some people talk about if there was a gap between the tire and the line and the tire. If there was a space there, which we don't have that. Maybe then that is over the line because it's no longer touching the line. But here, there's no evidence that that happened at all. That it was ever over the line at all. If there are no further questions, we would just ask that the court please rehearse the lower court's ruling on the motion to suppress. Thank you. Thank you. You will have an opportunity to make rebuttal. Mr. Robeck? Or is it Warbeck? It's Warbeck. Thank you. You may proceed, sir. Thank you, Your Honor. Good morning, Your Honor and Counsel. Good morning. May it please the court, as you just said, my name is Bill Warbeck, and I'm arguing on behalf of the city of Dayton. I'll begin by addressing the motion to suppress issue on the improper lane use, such as counsel did, and focus my argument on that as well. The issue with the motion to suppress hearing was whether the arresting officers had any reasonable suspicion that the offense of improper lane usage had been committed. Now, at the hearing, the defendant presented the testimony of Sergeant Salzman from the Wheaton Police Department. And I think Sergeant Salzman's testimony of that motion to suppress hearing  He stated the vehicle veered to the right and, quote, it crossed over the dash white lines, which separate the curbside lane from the median side lane, and then it quickly corrected itself and went back into the median side lane. A few moments later, after more questioning, after being asked to cross into the curbside lane, trying to focus on that, he stated, quote, it crossed into it, referring to the curbside lane, slightly by crossing over that line, but then it came back. And then he addressed the second maneuver where he admitted openly that it only nicked the lane, I believe is the word that he used. But he explicitly said, the first violation I saw was where he actually crossed onto the lane, over it slightly, and then came back. And then on cross-examining, this is important to note too, despite the distance, Sergeant Salzman was able to clearly see the tires on the car and the lane marking delineation on the road. That was Sergeant Salzman's testimony. Now, I know there were, as Counsel alluded to, there was a number of distances that were thrown out during the various hearings in this case. I understand that. As Counsel pointed out, one of the distances we heard was 100 yards at one point, a football field. And still, he was able to piece in. The video quality obviously is lesser than what the officer is testifying to, what his visibility was of it. And I know one of the things, Counsel didn't address it today, but I know in her brief she talked about how Sergeant Salzman differed in his testimony across hearings, saying it was 6 inches and then it was 8 to 12 inches. On that issue, I think it's important to realize from 100 yards away, the difference between 6 inches and 12 inches may not be as drastic from that sort of distance as the defense might have us believe. Sergeant Salzman was clear that he saw the tires go over the line. But doesn't, well, not at the motion to suppress, but ultimately doesn't the trial court hinge its decision on the fact that it was on the line? Well, when you say hinge its decision on that, I disagree with that perspective. I think at the motion to suppress hearing in the judge's findings, and I'll tie all this together here in an effort to answer your question here, but the judge's findings were explicit. He said, I think the officer's testimony was credible, was corroborated by the videotape, and it shows there is improper lane usage. And the court made a point of saying, you can see where the taillights are in the car, and they're obviously to the outside of the car where the wheels are, and a portion of those are to the right of the reflective white line. The officer said it went over by a few inches, and it seems to corroborate in the video. The officer's testimony adds to that. And then the court went on, and again, I'm citing from the motion to suppress findings. I find he's over the white line per the officer's testimony and is corroborated by the videotape. And what I mean by over it, he's over the top of it and then over even a little bit beyond that into what would be a portion of the right lane from the officer's testimony and is corroborated by the videotape. He based his ruling at the motion to suppress based on the credibility of the officer's testimony as well as the videotape. Everybody seemed, from all angles, including the trial judge, everybody seems to think the video wasn't necessarily the best evidence in this case. He coupled it with the officer's testimony, found that credible, and found the two of them in conjunction corroborate each other. Now, fast forward to the bench trial. Okay, and the reason I bring this up, I know you're asking about the motion to reconsider. At the bench trial, he again had live testimony from the officer. It was fresh in his mind. He made his ruling right after the testimony. Same in the motion to suppress hearing. He heard live testimony that day. He made his rulings that day. In both, and I can quote passages from the bench trial, but I'll jump to the point. In both of those situations, the motion to suppress and the bench trial, the court found that the two corroborated each other, that that's what aided the court in making the decision. The credibility of the sergeant's testimony, which was substantially identical to what he testified to at the motion to suppress hearing, coupled with what the judge was able to see in the videotape. At that motion to reconsider hearing, though, which is where the passage you're quoting from, he only had the videotape to watch. Nobody gave him a transcript. I'm kind of surprised by that, quite frankly. I'm surprised nobody gave the court a transcript from the motion to suppress hearing. I'm actually kind of surprised Judge Mercasey didn't withhold the ruling until he saw the transcript himself because he even made comments about he was struggling to remember some of the testimony at that time. I understand he doesn't have to have a transcript, but the reason I think that's important is his decision, as you can see from the motion and the bench trial, his decision and his ruling was based on the combination of the credibility of the testimony he saw and the assessments he made of that credibility coupled with the videotape and that they corroborated each other. So to the extent you're asking me that that was his, I don't know if you said final ruling or ultimate ruling, I don't know that that's his ultimate ruling. I think you have to look at all of that, and I know the court can look at all hearings that took place, not just the motion to suppress and the motion to reconsider. I think when you look at the bench trial and the motion to suppress. When was his recollection best? I would say his recollection was best right at the close of seeing the testimony that day. And the motion to reconsider, I believe, was a full four months, I think, is what the record said after he actually heard that motion to suppress. And in a DOI-exclusive courtroom, high volume, we can imagine how many hundreds of cases, in fact, there is he'd gone over in between. I don't know the judgment because he has notes with him at the time of the motion to reconsider. I don't know that he takes notes and keeps notes. I'm not sure. There's no reference to it, no evidence that he referred to his notes. No evidence that he did. Exactly. Absolutely. But it seems that, at least on the motion to reconsider date, he kind of nudged everybody and said there's no transcripts, what's going on here, there's no transcripts. And they just, all right, I'll rule on the videotape. And I think we're all in agreement, the videotape, again, the videotape is of poor quality, as Judge Marchese said. Which is why he went over to the officer's credibility and that's what carried the day. But he does. And corroborated each other. He does reference in the motion to reconsider that I'll accept what's been written in the motion as being an accurate representation. Yes. And then he says, but looking at the video itself, the car goes right on top of the right line and then drifts back. And that would then be a Mueller issue, wouldn't it? It would be a what issue? A Mueller issue. Well, and I see what you're saying, I do. And this is after deliberation and now he's got time to look at it again. Right. He did say that he would accept what was written in the motions, you're right. Again, I think his rulings were more detailed and he got more into what the officer's credibility was when he had that available to him. I know I keep emphasizing, but I think it's a crucial point in this case, is that it's not just what you see in the videotape. I think all of us can keep watching the videotape and there's multiple interpretations that seem to keep popping up. Yeah, I have to say that's what troubles me. In what sense? To say that that video corroborates watching these tires cross that line at least twice stretches credulity. Well, to be clear, with all due respect, the testimony was that it crossed the line once, touched the line a second time. Based on, actually even worse, because the first crossing is when the vehicle is at its farthest point in the video. Correct. Which we're assuming because... I mean, you can't tell anything from that video. And to say that that corroborates his testimony, I find that very troubling. Well, and I thought about that, too. If I'm in the judge's position, I think the way I would have been viewing the videotape, because remember, the video was played after the sergeant's testimony. So you've got the sergeant testifying, but it went over the lines. I saw it, I had no doubt in my mind. So now you're going into the video viewing with that in mind, and you're looking for it. And I think that aided him in corroborating it. I'm not going to consider and pretend that the video is the test evidence here whatsoever. And believe me, I agree with you on that. But I think the sergeant was clear in his testimony, and I think the court was clear that he found the sergeant's testimony credible. The court assessed the credibility of this. And that's one of the big differences. We're talking about the Mueller decision here. I want to come back to that. The Mueller decision, as your honors know from this honorable court, was decided in December of 2018, which is after all of these hearings took place, the reconsiderations, everything. And still, I think his ruling, even without the guidance of Mueller, I think his ruling is right on point with Mueller. A couple points on Mueller. Number one, in the Mueller decision, there was no videotape. It was just the officer's testimony. And the other big difference is the officer in Mueller never said that he crossed the lines. Testified repeatedly in the same hearing that he only touched the lines. So there was never an issue of did he cross the line or not. The officer said, no, he touched the line. That was it. There was no video to complicate matters. Had that officer in Mueller testified that he went over the lines, it might have been a different issue. It might not have been an issue at all if he had teleported at that point. It would have been clear-cut. The only evidence we have is the officer saying that he went over the lines. Here you have an officer saying that the motion was suppressed as well as a bench trial. He crossed over the lines. I saw it. I have no doubt. He also had the video. I understand the video is not great, but I think the sergeant's testimony, as the court found, was credible on that. Which part of the testimony did he believe? That he was 50 feet behind, six car lengths behind, or 100 yards behind? Obviously, I can't climb into the judge's head and figure out which one that he believed. I don't think the record is real explicit on that. I don't know, with all due respect, that that mapped. At one point, the officer conceded in testifying that it may have been up to 100 yards away. Either way, I still saw it. I saw what I saw. I can see a football field during the day. A football field at night needs lights. Are there any lights around to help him see that 100 yards, up to 100 yards, other than the lights that are oncoming and his own lights on the back of that car? Again, I don't know. The judge's vision is me. I'm not here for privacy. You can have it the other way. I don't know. And I know there was some testimony that there was at least some ambient lighting. I know it. And I apologize. I can't remember the basis. This is Butterfield Road, right? Yes, it was Butterfield. Thank you. Wasn't the sergeant also training another officer? He was, Officer Kaufman. Fair to say, divided attentions? By Sergeant Salzman? Mm-hmm. Well, but I think if you look at the testimony in there, he, you know, first of all, the defendant called Sergeant Salzman, let's say, and not Officer Kaufman. There's no testimony from Officer Kaufman regarding anything improperly used. In order to the state? City, correct. I'm sorry, you're right, City of Wheaton. Plus the, I don't mean to correct you, I'm sorry. Fair enough. But I think his testimony was pretty clear. He was watching what was going on, absolutely. And if you follow his testimony, at both the motion to reconsider and the bench trial, he's testifying as to what he saw. And then once he saw it, he immediately looked to his recruit, Officer Kaufman, and said, did you see anything that's improperly used? Are you going to do anything? I'm going to pull him over for that. Okay. So I don't know that he was necessarily, he wasn't focusing on Kaufman. Kaufman's just driving a car up and down Butterfield. No? I would be hoping that a police officer on patrol is doing more than driving, but I'll give you an answer. Well, obviously Officer Kaufman's making his observations, but Sergeant Salzman, I'm making an assumption here, but I'm assuming he's not paying attention to how Officer Kaufman's driving a car necessarily other than maybe, you know, gaming on the vehicle. So Salzman's in the passenger seat? Yes. That's my understanding. Okay. That's what I got from the transcripts. And again, I wasn't interfering myself either. I'm going off the transcripts just like you are on this one. Okay. Fair enough. So I believe that Sergeant Salzman was in the passenger seat on that one. But I think ultimately, even without the explicit guidance of Mueller at the time of these hearings, I think the ruling is in step with what the Mueller decision said. The vehicle can't pull someone over for improper lane usage until the tires cross over the line. Now, the trial court also made reference to the Greco decision, which was interesting as well. The court found that even under Greco, there's weaving within the lanes here. And then the court went so far as to say it went further and said this actually goes beyond Greco. I'm finding that it's improper lane usage. And based on his findings, and the court's explicit language at the motion to suppress the bench trial, that the tires went over the line, I find that they did based on Sergeant Salzman's testimony as well as my viewing of the video. I think that's in my step with Mueller. Ultimately, Your Honors, I believe the court's findings of the fact were not against the manifest way to the evidence. While the video was poor, it may lend itself to at worst multiple interpretations of what the bad driving may or may not have been. At the end of the day, the officer testified that the tires did in fact travel over the line. The court assessed the credibility of that witness. Found him credible and corroborative of the video. And as I say, I believe the decision is in line with what Mueller dictates. We ask that you affirm the denial of the motion to suppress. Thank you. Thank you, Judge. Ms. Ariso, you may proceed. Regarding the fact that the motions reconsidered that the judge had not just heard the officer testify, it's important to consider the fact that the officer's testimony was not solid, great testimony that had the judge just heard it again would have convinced the judge that this video showed something that it didn't. As was just pointed out, when he actually testified at the motion to suppress, he said that he saw the tire cross slightly. So not only is it a distance of 100 yards, dark, no street lights, no light except for the headlights, he's saying that he saw something slightly over, slightly. I mean, it's very difficult to believe that that testimony would have, had it been fresher in the judge's mind, been enough coupled with watching the video to say, oh, no, wait, it was over the line. And the judge's finding ultimately was that it showed that the tires were on top of the line and not over the line. And regarding the fact that there was no video in Mueller, it's actually helpful in this case, I think, that there is a video because without the video, you just have the officer's testimony. And here you can see that the video does not support, certainly does not corroborate this officer's testimony. And therefore, the motion to suppress should have been granted. Are there any other questions? Thank you. We'll take the case under advisement. We have one more case on the call that we have shortly.